OPINION
Appellants, Robin Connor and Steve Coleman, appeal the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, to award permanent custody of Ronnie Connor, a dependent minor child, to Franklin County Children Services ("FCCS"). Appellants contend that the trial court erred by concluding under R.C. 2151.414 that the child could not be placed with either appellant within a reasonable time, that the court erred to the detriment of appellants by qualifying a witness as an expert witness, and that the court violated due process by failing to comply with R.C. 2151.414(C). Because the trial court had sufficient evidence to conclude that the child could not be placed with either appellant in a reasonable time, because the appellants waived their right to object to the testimony of the expert witness, and because the appellants waived any R.C. 2151.414(C) violation, we disagree. Accordingly, we affirm the judgment of the trial court.
Ronnie Connor was born on September 4, 1988. For the first five years of his life both appellants raised him. Appellants are deaf, but Ronnie is not. In December of 1993 Mr. Coleman, the putative father,[1] left the family residence and moved an hour away from Columbus. This move, according to Mr. Coleman, was the result of abusive treatment he received from Ms. Connor and the fact that Ms. Connor frequently left Ronnie with him to go drinking. According to the testimony of both appellants, Mr. Coleman did not have contact with Ronnie for approximately a year and a half after the move. Mr. Coleman claims that the reason he had trouble contacting Ronnie was that his license was suspended due to a DUI conviction. The evidence also indicates that Mr. Coleman's contact with Ronnie after his license was reinstated was sporadic at best. Consequently, Mr. Coleman did not have a significant role in Ronnie's life for a period of four years.
On January 24, 1997, Ms. Connor called the police and reported that Ronnie was vandalizing her car. Ms. Connor further stated that she was having difficulty controlling the child and let them know that she could not handle Ronnie's behavior anymore. The police notified FCCS who removed the child from the home. On March 18, 1997, the court granted temporary custody of Ronnie to FCCS. On March 30, 1997, the trial court adopted a case plan for the reunification of Ronnie and Ms. Connor. Mr. Coleman was unaware that Ronnie had been placed in the custody of FCCS until March of 1997. Mr. Coleman did not express any interest in parenting Ronnie full-time until January of 1998. On July 17, 1998, FCCS filed a motion for the permanent court commitment of Ronnie Connor. The magistrate awarded permanent custody of Ronnie to FCCS. The trial court approved and adopted the decision of the magistrate on November 26, 1999. Appellant Robin Connor appeals, assigning the following errors:
 I. THERE IS INSUFFICIENT CREDIBLE EVIDENCE TO SUPPORT THE JUDGMENT OF THE TRIAL COURT WHICH IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED IN FAILING TO ORDER COMPLIANCE WITH O.R.C. 2151.414(C) THEREFORE DENYING APPELLANT HER PROCEDURAL AND SUBSTANTIVE DUE PROCESS PROTECTIONS.
Appellant Steve Coleman appeals, assigning the following errors:
 I. THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT IN THE BEST INTEREST OF THE MINOR CHILD, AS THE FRANKLIN COUNTY CHILDREN'S SERVICES AGENCY HAS FAILED TO PROVIDE CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILD RONNIE CONNOR COULD NOT AND SHOULD NOT BE PLACED WITH THE FATHER WITHIN A REASONABLE PERIOD OF TIME.
 II. THE TRIAL COURT IMPROPERLY AND PREJUDICIALLY PERMITTED THE INTRODUCTION OF EXPERT WITNESS TESTIMONY THROUGH THE WITNESS STEPHANIE BOWMAN WHO DOES NOT QUALIFY AS AN EXPERT WITNESS UNDER THE OHIO RULES OF EVIDENCE.
The first assignment of error made by each appellant is that the decision of the trial court was against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the decision is supported by sufficient competent, credible evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. See, also, Bechtol v. Bechtol (1990), 49 Ohio St.3d 21.
Consistent with the language of R.C. 2151.414,[2] the Ohio Supreme Court established a two-prong test for trial courts to apply whenever they are faced with a petition for permanent commitment. See In reWilliam S. (1996), 75 Ohio St.3d 95. First, in order to grant a permanent court commitment, the court must determine by clear and convincing evidence that the child could not be placed with either parent within a reasonable time or should not be placed with either parent. Id. at 99-100; R.C. 2151.414. The statute contains certain enumerated factors that, if found to apply to each parent, require the court to determine that the child could not be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.141(E). One of those factors is whether the parents have failed to remedy the problems that initially led to the child being placed outside of the home. R.C.2151.141(E)(1).
The second prong requires a court to find that permanent commitment is in the best interest of the child before the court grants a permanent court commitment. In re William S., supra, at 99-100; R.C. 2151.414(B). In determining the best interest of the child the court shall consider,inter alia, "the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(4).
With respect to Ms. Connor, the trial court had sufficient competent, credible evidence to conclude that the child could not be placed with her within a reasonable time or should not be placed with her. Since the time that Ronnie Connor was placed in the temporary custody of FCCS, there is virtually no evidence indicating that Ms. Connor has abided by the case plan established to reunite her with Ronnie. The case plan objectives can be broken into two distinct groups of requirements. The first set of requirements are designed to help Ms. Connor help herself, and the second set of requirements are designed to help her understand the demands of parenting and the demands of her child.
Under the first set of requirements, the case plan required that Ms. Connor become drug and alcohol free. Although Ms. Connor testified that she had since quit using drugs and alcohol and had been clean for four months, she failed eight of fifteen drug tests during this period. Moreover, Ms. Connor claimed to have completed drug counseling, but she did not provide any documentation to FCCS or the trial court. The case plan required Ms. Connor to attend Alcoholics Anonymous meetings. She did not attend those meetings. The case plan also required Ms. Connor to attend counseling sessions for mental health issues. After an initial period of refusal she finally met with a counselor, but quit attending after approximately one month.
Under the second set of requirements, the case plan required that she understand her child's behavior and development and how her behavior as a parent impacts the child's behavior. To that end, Ms. Connor attended counseling sessions where techniques were presented to assist her in addressing Ronnie's behavior. While acknowledging that she was instructed on these techniques she could not remember any specific parenting techniques she learned. Moreover, Ms. Connor consistently failed to acknowledge that her actions affect her child. For example, Ms. Connor has told Ronnie that he is bad while his deceased brother was good. Yet, she does not think that this causes Ronnie any emotional stress. Ms. Connor also acknowledged that she informed a case worker that the reason she wanted her son back was so that she could again receive a check for his care from the social security department.
With respect to Mr. Coleman, while the record indicates that he made a commendable attempt at complying with the case plan, the trial court had sufficient competent, credible evidence to conclude that the child could not be placed with him within a reasonable time or should not be placed with him. Mr. Coleman's own testimony indicates that he still does not appreciate the needs of the child nor the impact his actions have on the child. There was testimony that, even though Mr. Coleman had been educated to follow a four-step procedure of warning, counting, removing the child from the circumstance, and restraint when Ronnie has a tantrum, Mr. Coleman is not able to articulate this plan or use it.
Stephanie Bowman, a licensed social worker, who has provided therapy to Ronnie and his family, testified that while Mr. Coleman may have financially supported Ronnie in the past, that he and Ronnie do not have an emotional relationship as father and son. She explained that there is no emotional closeness or trust or even any discussion about emotional issues. Ms. Bowman also testified that Mr. Coleman does not seem to understand or grasp Ronnie's difficulties or how to handle them. She further testified that Mr. Coleman has continued to make negative comments about Ms. Connor even after he observed Ronnie becoming nervous and sad when he did so. Ms. Bowman also explained that both parents argued in front of Ronnie even though it caused him great distress. Ms. Bowman opined that even though Mr. Coleman loves Ronnie and genuinely wants to care for him, he cannot and could not provide for Ronnie's emotional needs.
Daniel Mix, an employee of FCCS and a licensed independent social worker, testified that Mr. Coleman had no concrete plans about how he would care for Ronnie. He also opined that Mr. Coleman may not have the skills or capabilities to handle Ronnie's behavioral problems.
Jill Roberts, an FCCS supervisor and the caseworker until August of 1998, testified that neither parent has completed the case plan or is able to provide a permanent home for Ronnie. She also testified that Mr. Coleman does not understand Ronnie's behavioral problems and cannot articulate proper ways to deal with Ronnie.
It is equally apparent that a permanent court commitment is in the best interest of the child. Ronnie suffers from attention deficit hyperactivity disorder and generalized anxiety disorder. After two years of therapy and living in the same foster home, he improved to the point where he could return to a school for children with severe behavior problems.
We find that the decision of the trial court is supported by sufficient competent, credible evidence. In short, Ms. Connor and Mr. Coleman have "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1). Moreover, Ronnie's "need for a legally secure permanent placement" is paramount and there is sufficient credible evidence that such an environment cannot be "achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(4). Appellants' first assignments of error are overruled.
Mr. Coleman's second assignment of error contends that the magistrate erred by permitting an unqualified witness to testify as an expert. Pursuant to Juv.R. 40(E)(3)(b), a party is not permitted to assign error on appeal unless the party objected to the alleged error. In his objection to the magistrate's decision, filed July 22, 1999, Mr. Coleman did not raise the issue of expert testimony. Since he did not bring that issue to the attention of the trial court, he has waived the right to argue it before this court. Consequently, this assignment of error is overruled.
Ms. Connor's second assignment of error contends that the trial court erred in failing to order compliance with R.C. 2151.414(C) and thereby denied her right to due process. Specifically, she argues that the guardian ad litem did not submit a written report prior to or at the time of the permanent court commitment hearing as required by R.C. 2151.414(C). We agree that an error occurs when a report required by R.C. 2151.414(C) is not submitted. See In the Matter of Robert King and William Blevins
(Aug. 11, 1999), Adams App. No. 99CA671, unreported. However, any claim of error arising from the failure of the guardian ad litem to submit the report is waived if it is not objected to at the time. See In re Cordell
(Apr. 2, 1992), Cuyahoga App. No. 60049, unreported; In re Keltner (Aug. 10, 1998), Butler App. No. CA97-10-188, unreported.
The record indicates that on October 5, 1998, Ms. Connor's counsel brought to the court's attention the fact that the guardian ad litem had not submitted a report as required by R.C. 2151.414(C). The magistrate stated that she believed the guardian ad litem had a report ready for submission. The guardian ad litem then stated that a report could be provided but it would not contain the guardian ad litem's opinion. The guardian ad litem continued "this is a contested hearing and I need to hear all the evidence prior to making a decision on the case." (Tr. 9, Oct. 5, 1998.) The magistrate proceeded to inform counsel that a report would be submitted but it would only contain procedural information. The court stressed that the "report is not a position report." (Id. at 10.) Ms. Connor did not object to this. In fact, her counsel concluded the discussion by stating "Okay. Good. Thank you." Id.
On September 20, 1999, objections to the magistrate's decision were heard and Ms. Connor claimed that the guardian ad litem did not file a report as required by R.C. 2151.414(C). The trial court took notice of the fact that a report had been filed but stated that the report was insufficient because it did not contain any substantive information. Consequently, the trial court ordered the guardian ad litem to submit a substantive report within the next fourteen days. The guardian ad litem
submitted the substantive report on September 22, 1999. As a result, the court found Ms. Connor's objection to the magistrate's decision to be moot. By judgment entry dated November 26, 1999, the court adopted the magistrate's decision.
Although Ms. Connor raised the issue of the report before the magistrate, she did not object to the form of the report. Ms. Connor, through counsel, assented to the fact that the report would be purely procedural in nature. Thus, we find that she waived the right to object to the report. Moreover, even if we found that she had not waived this right, the fact remains that a substantive report was filed and reviewed by the court before adoption of the magistrate's decision. Although Ms. Connor points to potential prejudices that could result from the late submission, she does not point to any actual prejudice. We do not find any either. Consequently, this assignment of error is overruled.
Having overruled all of appellants' assignments of error, we affirm the judgment of the trial court.
 _____________________ KLINE, J.
BROWN and LAZARUS, JJ., concur.
KLINE, J., of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] We note that Mr. Coleman's parental status has never been judicially determined. Since Mr. Coleman admits to fathering Ronnie and since none of the parties raised this issue at the proceedings below or these proceedings, we consider Mr. Coleman to be Ronnie's father for purposes of this appeal.
[2] The statutory requirements relating to permanent custody have been modified since FCCS moved for permanent court commitment. We apply the law in effect at the time FCCS filed this petition.